Case 18-2446, Korean Claimants v. Claimants' Advisory Committee, et al., argument not to exceed 15 minutes for appellant and 15 minutes to be shared by appellees. Mr. Kim, you may proceed for the appellant when ready. Good morning, Your Honor. My name is Yeonho Kim. I am representative of 2,600 Korean claimants. This case is about a small country located in the northeast area. It's only about the Korean claimants who filed claims with the Dow Corning settlement facility because of their injury of the bodies, implantation of breast implants produced and sold by the Dow Corning Corporation. What's your best case that you're relying upon that we should follow what you're asking? Do you have one good case that would show we have to follow what you say? Actually, I had three cases before this court. Two cases were dismissed. The case is about the recategorization of South Korea. Because South Korea became the country, their GDP per capita exceeded 60% of the U.S. GDP per capita. The second case is about the motion for reversal. This means the settlement facility decision to cancellation of their approval of product identification should not be canceled.  Those two cases before this court were dismissed last year. I'm not sure. Maybe what Judge Seiler was asking is cases we've decided that are the side issues like the issues you're raising where our court or another court has said that we're allowed to look beyond the core language of the plan and have some flexibility in how it's applied. So it might apply to your clients, to allow your clients to have claims that maybe at first blush don't totally square with the terms of the bankruptcy plan? Our claims to settlement facilities only follow the reorganization plan and relevant document, which was approved and confirmed by district court. During the hearing for confirmation of the Dow Coin plan, we asked about the discrimination of 35% of benefit in comparison of domestic claimants. It should not be accepted because we are equally injured in comparison. So you don't have a case that supports your position, the case referred to by Judge Seiler and Judge Radler? I mean, for this case? We're asking you something extraneous to this case, a case that a court has decided other than this case that tells us that we should adopt your position. Yes, because of the cases this court dismissed last year is related to the case of today. Because of a motion for reversal, it's related to a case about the settlement agreement. The late claims administrator of a settlement facility proposed a mediation to me and the Korean claimant for resolution of cases before settlement facility in regarding to product identification issues. At that time, 2012, we have cases pending before this court called the motion for reversal because the claims administrator actually, the attorney-at-law for settlement facility at the time for mediation proposal canceled all his approval decision for the Korean claimant product identification. So because of that, he proposed for mediation. After I filed the motion for reversal, we had this court. So following his proposal, I attended the conference for mediation held by the special master in Washington in 2012, August 10, at one of the alternative resolution center in Washington. Actually, at that conference for mediation, we agreed, the counterpart of settlement facility and lawyer for settlement facility agreed with me to pay $5 million for resolution for claims before settlement facility. Also, the motion for reversal before this court with the $5 million. And then we agreed to write, to reduce the document, which is called the Memo of Understanding and Release. And I signed it and sent it back to David Austin, which is attorney-at-law for settlement facility and the claims administrator and Phyllis. But I didn't receive their count signed. But I realized that that agreement is consummated because we already agreed orally before mediator during mediation conference. And to reduce into document is not important under the law of New York, which is applicable for the plan and relevant document. So I expected to receive $5 million for the resolution total of 2,600 Korean claimants. But they did not respect and honor because of Dow Corning did not agree the $5 million release from the settlements. What was the authority of those parties to negotiate, assuming we agree with you that it was a final agreement, which that's debatable, but assuming it was, what was the authority based upon the reorganization plan for those parties to negotiate that agreement sort of outside the normal course of how the reorganization was working? That is debatable. Because I was proposed by the attorney-at-law for the settlement facility because I agreed to enter into settlements and negotiations with him and the claims administrator at the time. He is the current administrator of the settlement facility as well. Whose idea was it originally to have this mediation? Was it the claims administrator or you or somebody else? I was a representative of a Korean claimant. He was an attorney for a settlement facility, also attended by the claims administrator. The mediator is a special master of a finance committee. A finance committee is an organization or the instrument operating the settlement facility. Even if a finance committee is supervised by a district court, this finance committee is almost the highest authority to operate the settlement facility. So I thought I countered with the settlement facility through finance committee and the claims administrator. Also, I countered by the attorney for a settlement facility, Mr. David Austin, Mr. Austin used to be a claims administrator as well. After he retired from the claims administrator, he became the attorney for a settlement facility. He was replaced by Anne Phillips, his claims administrator. Two people, claims administrator and attorney for a settlement facility, attended the conference for mediation. I was attending for the Korean claimant. So I thought this mediation setting is the final setting for consummate mediation agreement. But after the mediation is over and I received a writing, I received an MOU and a release in writing from the claims administrator and the attorney for a settlement facility, they did not respect the mediation agreement with me. That is why I came here. I filed a motion for recognition and enforcement with this court. It sounds like you're relying more on their good faith or what the agreement you thought was agreed to as opposed to whether they actually had authority to do this under the reorganization plan. Your Honor, I do not depend upon their good faith. I depend on the agreement, the contract entered with me through mediation conference. Under the new law, I researched it, mediation is comparable to court. So if any old agreement agreed during mediation conference, mediation should be respected if it was entered into by the attorney. You have to remember this is all done against the backdrop of a very complicated reorganization where there are a lot of parties involved, a lot of interests that have to be honored. Those agreements typically set very firm rules about what can be decided or negotiated outside of the core rules set forward from the plan. It was just an observation. I think your time is up. I'm sorry. Did you reserve time for rebuttal? Yes, I have five minutes. Did you fully respond to what Judge Radler just said? Or you can do it on rebuttal. I can't have a rebuttal. Yes, I just didn't recall how much time he had reserved. Good morning. May it please the Court, my name is Deborah Greenspan. I am here today representing the plan proponents, that is, the Claimants Advisory Committee, the debtors' representatives, and the reorganized debtor, Dow Corning, now known as Dow Silicones. Is Mr. Manning going to argue as well? I'm sorry? Is Mr. Manning going to argue as well? Yes, Mr. Manning is going to argue. He is going to have five minutes. I am taking ten minutes. Thank you. We ask that this Court affirm the judgment of the District Court for the simple and dispositive reason that the plan prohibits the proposed use of these funds. The plan prohibits the type of agreement that Mr. Kim seeks to enforce on behalf of Korean claimants. What was the purpose of this mediation? Because it looked like it didn't follow the plan of the reorganization. Why did we go through all this effort? So, Your Honor, the plan proponents were not involved in the mediation and were not informed of it at all. So we have no real understanding. I can only tell you what we see in the record, which are these mediation statements, where it looks like they got together to talk about the mechanics of using affirmative statements to prove proof of manufacture under the plan. There had been a dispute about that. Mr. Kim had filed a motion in the District Court seeking to reverse decisions of the claims facility about those affirmative statements in the processing of his claims. But the plan proponents never had notice of this or any knowledge of it until after the fact. So there are six fundamental points. Who was involved in the mediation? I'm sorry? Who was involved in the mediation from this point? Based on the documents that we've received in this dispute, Mr. Kim was involved for the Korean claimants, Ann Phillips, who is currently the claims administrator, David Austern, who is a former claims administrator, and Francis McGovern, who is the court-appointed special master in the case. Yes. These weren't low-level. I mean, there were people directly affiliated with the plan for reorganization. And you could imagine the other side of that negotiating table thinking that this was a meaningful negotiation that was actually going to effectuate their rights or resolve whatever claims they have. So, Your Honor, that's obviously an important point here. But I would submit that it was completely acceptable for those groups to get together to talk about the mechanics of proof-of-manufacturer submissions. There had been a long back-and-forth discussion between the claims administrator, the former claims administrator, and Mr. Kim about how those documents were to be submitted. That was perfectly fine for them to talk about what should be in an affirmative statement, what should not be in an affirmative statement. Somehow, during the course of this process, this evolved into some other kind of discussion. I would suggest, Your Honor, that it is not reasonable for Mr. Kim or Korean claimants to assume that these people did, in fact, have that kind of authority to obligate funds out of a plan of reorganization where there are specific rules, specific guidelines, dictating how the assets of the plan are to be distributed to the creditors. And Mr. Kim is very well aware of those rules because he was proceeding to submit his claims under those rules. In addition, the plan is abundantly clear. The only person, the only entity that has the right to obligate funds or to approve the distribution of funds from the plan assets is the district court. The plan explains the role of the finance committee. They have an administrative function to manage the finances, and that is it. They have no other authority. The special masters, in addition, special masters, everybody who practices law in the federal courts understands special masters are appointed. They're appointed for defined, specific purposes. That does not mean that they all of a sudden have authority that is equal to that of a district court or, in this case, maybe exceeds that of a district court. What about if they negotiate with parties that probably don't ordinarily appear in our federal courts, maybe parties that are situated halfway around the world, that maybe aren't as familiar with U.S. bankruptcy law? That may be true. Mr. Kim has been, is licensed to practice law in the United States and has been litigating this case since 1998, as far as I can tell. He was involved in the bankruptcy case. He appeared in front of the bankruptcy court. He's appeared consistently in front of the district court in this case. He is practicing law. He's supposed to be familiar with the rules. So I understand that the Korean individuals, perhaps, might not be familiar with the rules. I believe that there are six fundamental points that are important, and Judge Radler raised them in his last question to Mr. Kim. First, the plan controls the distribution of the assets to creditors. That is what the plan of reorganization is. The debtor provides assets. The plan explains how those assets are to be distributed. In this case, we're talking about the settlement program for breast implant claimants. The plan has dozens of pages of guidelines about how funds are to be provided to those claimants, what they have to do, what they have to submit, what kinds of criteria are necessary in order to allow a claim to be paid. So there's a specific set of guidelines, and the plan itself says those guidelines are the exclusive means by which funds may be provided under the settlement program for settling claimants. There is no discretion granted to the claims administrator or the finance committee or anyone else to vary these requirements, to deviate from them, or to fashion an alternative. That's why I don't fully understand this. I know what the plan says, and yet they had this meeting, and I don't know how long the meeting lasts. But anyway, the plaintiffs claim that they were having this meeting, and therefore they're entitled to go against the plan. What did I miss? I don't know. You didn't miss anything. That is what happened. They had this meeting, and I can't speak for the people who were at the meeting because I wasn't there, but the participants in the meeting failed to examine the plan before they made these statements about whether this kind of process could work. They came to realize after the fact that it was not feasible under the plan. I think in the heat of the meeting, they thought maybe this was a reasonable resolution, but after examining the documents, they realized it could not be. I don't understand. You couldn't possibly think that a one-and-a-half page memorandum of understanding that was full of blanks and had to be signed could modify this multi-hundred page plan of reorganization and provide a different kind of distribution. So the relief sought by the Korean claimants is not provided for in the plan. There is no ability to provide some kind of a lump sum payment without examining the claims, without assuring that the claims meet the eligibility requirements. To allow such a payment is tantamount to modifying the plan. Basically, it would be a change in the plan, and as we all know, the plan cannot be amended. The plan itself provides that it can't be amended, but more importantly, the bankruptcy code prohibits amendments. This plan went into effect in 2004. By the time this meeting took place, it had been in operation for eight years. It was substantially consummated. The bankruptcy code 1127B prevents modification of a plan. So the plan basically precludes this outcome. He says Mr. Kim is really focused on the fact that there was this meeting and there was this document that was created out of the meeting and that because he signed it, it's now a binding agreement. Again, I want to focus back on the plan itself and just emphasize the reasons for these criteria that we have in the plan for distributing the assets. These criteria are critically important. They are objective qualification criteria. They assure the equivalent treatment of claimants in the same plan class. And again, as the bankruptcy code requires, individuals in the same plan class must receive equal treatment. So by having these objective criteria and mandating that all claims go through these procedures and satisfy these criteria, we assure this equal treatment. They allow claimants to evaluate their options. They have a function to allow individuals to determine where they fit in the plan settlement structure. They protect the fund. They protect the fund against fraudulent claims and unqualified claims. This is a limited fund. There's a cap on the amount that can be spent for these claims. And if unauthorized claims pull money out of that fund, you simply reduce the funds available for other claimants and then you potentially require the debtor to pay an amount in excess of what the debtor would ordinarily be required to pay. So these criteria protect the debtor from paying for unqualified claims. So what the Korean claimants are seeking here is they seek to circumvent these plan requirements, and that simply can't be done. The plan is mandatory. The plan cannot be amended. This distribution is not permitted. There's a long discussion in all the briefs about settlement agreements and who can make a settlement agreement. I want to respond to one point Mr. Kim made. He says a mediation is equivalent to a court proceeding. There is a case that he's relied on. It's the Lee case in New York. That case does not support his position. In that case, the parties to the mediation agreed in advance that they had agreed, and the court rests on this point. They had agreed that there, in fact, was an agreement. That is not the case here. This issue is in dispute. So my time is up, unless you have any questions that you would like me to answer. Thank you. Good morning. May it please the Court. Rex Manning on behalf of the Finance Committee. The most important aspect of this case is its nature. This is a bankruptcy proceeding, and that means that the questions that you must ultimately answer are bankruptcy questions. In keeping that in mind, I want to propose the most efficient way to resolve the appeal, one that will not require you to go outside of bankruptcy law, and one that involves recasting the questions that the parties have raised as a single bankruptcy question. Does 1127 allow for the type of relief that claimants seek? Put differently, could the district court have even granted them what they're asking for? And to get to that answer, you can use a simple syllogism. The major premise is that 1127 does not allow the reorganization plan to be modified in this case. The minor premise is that the relief that claimants seek would require modifying the plan, and then the conclusion is, under 1127, we can't grant that type of relief. So you're saying there's no relief available at all here? Right. Given how 1127 applies to the facts of this case, bankruptcy law alone resolves the appeal. You don't need to get into other areas of law like agency or contract law, which are certainly helpful in kind of conceptualizing the facts and what happened here, but when you get down to the nitty-gritty of applying it, it presents a couple of problems. Instead, you can stay solely within bankruptcy law and specifically 1127 and its incorporation of Section 1123 and 1123A4 to be very specific. And so to kind of drill down on that, the closest subsection of 1127 to getting to what we might be able to modify here is 1127B. It outlines the who, the what, and the when of modifying a bankruptcy plan. So if we start with the who, 1127B says that either a reorganized debtor or a plan proponent may modify the plan, the inverse of that being if you're not a reorganized debtor or if you're not a plan proponent, you may not modify the plan. And here, neither the Finance Committee nor the Korean claimants fit into either one of those categories as a plan proponent or as the reorganized debtor, and so that means that they can't agree to modify the plan. Do you know why they had this meeting? Yes, Your Honor. So the record reflects that it started as a discussion about what was actually the most recent appeal here in the Sixth Circuit, which was an administrative hold that the settlement facility had placed on processing all of the Korean claimants' claims because of suspected fraud, and that deals specifically with the proof of manufacture. I think the Court kind of covered it in the most recent opinion, but there was some evidence that there was whiteout on some of the things that were submitted to the settlement facility, and so the meeting in Washington, D.C., the purpose of it, the way it began, was to discuss if there was a way to lift the administrative hold or to iron out the proof of manufacture with affirmative statements instead of medical records. At some point, it shifted. The record doesn't reflect exactly when the conversation shifted, but it's important to keep in mind the parties went into the mediation ready to discuss the topic of an administrative hold and the affirmative statements, not potentially resolving all the claims in one fell swoop via a lump sum payment and a group settlement. Was it your clients that were at the meeting? Yes, and technically a former client. So Mr. Austin at the time had already resigned his position as claims administrator but was still involved, and some of the emails in the record suggest that he was the one predominantly communicating with counsel for Korean claimants. As a meeting can start with one purpose and end somewhere else, and so your friend on the other side would say that it doesn't matter where it started. It ended somewhere else, and he had what he thought was a good faith belief from people who were quite important to the bankruptcy. Maybe they didn't have the ultimate authority, but maybe he thought they did. So there's that appeal to the case, which you've made the point might exceed the express scope of the bankruptcy law and the provisions here, but there is some appeal to his case in that sense. Absolutely. Actually, there are certainly some head-scratching things that occurred. By your clients? Absolutely, admittedly. But I think that kind of goes to the concept of apparent authority, and the important thing to keep in mind when we're talking about apparent authority, and we can get into some of the troubling issues of trying to apply that concept to a bankruptcy proceeding, but the important thing to keep in mind there is that there's really kind of two parts of the test. First, was there actual knowledge of a lack of authority? And then second, was it reasonable to believe? And the district court made what I would submit were factual findings saying that counsel for Korean claimants' long history and involvement in the case, even though he might have been meeting with a claims administrator, a former claims administrator, and the special master, he should have known that the plan just doesn't allow this type of settlement. And so I see that my time is up. If there are any other questions from the panel, I'm happy to answer them. Otherwise, I just want to say a quick personal thank you. This is my first argument as an attorney, so it means a lot to be in front of you today. Thank you. Mediation is alternative dispute resolution. It should be respected all around the world. Every court around the world respects mediation. If under the theory of a bankruptcy court or the plan which was confirmed by UNSC court, if it does not respect mediation results through this motion, this appeal in this court, would be laughable to all attorneys practicing around the world. The mediation should be respected because the finance committee has full authority to operate the settlement facility. Principle of the agency theory, agency principles of the finance committee, the prayers for mediation actually as a major majority members of the finance committee. Finance committee initiated the mediation, proposed the mediation to me and the Korean claimant, actually had agreement orally and then reduced the writing title of the MOU and release. Why? The finance committee self-destructively denied the agreements in the form of oral agreement, in the form of written agreement. It is ridiculous. The finance committee is denying the respect and the enforcement of mediation agreement. They entered with me and the Korean claimant. A lot of your clients recovered in this case, right? About 1,200 clients got money out of this before you got in. Current status of the Korean claimant, out of 2,600, only 1,100 Korean claimants received the payment. Total amount of $7.3 million. So the settlement facility, until now, rejected all the claims filed by the Korean claimant on the basis of a fraud of product identification or insufficient of payment criteria, such as disease claims or explained claimants and erupted claimants. So out of 2,600 Korean claimants, only 1,100 claimants received the payments. Now, settlement facility closed in their operation. They closed June 2019, last year. They do not... They didn't recover, had a chance to file a claim, right? Yes. They argue the excluded meaning of plan. Plan is simply an agreement between creditors or debtors. Plan proponent is able to modify the clauses of plan. They do not, because without any kind of debtor. It's only discriminatory retreatment to Korean claimant only. Foreign claimant did not receive what they should receive. They expected from the beginning of confirmation hearing, because Dow Corning sold their products, 50% of their all products sold to foreign countries, but they did not pay the equivalent comparable compensation to the foreign claimant because they only protected domestic claims. It is turned out very unpleasing, unsatisfactory from perspective of foreign claimant including Korean claimant. Korean claimant argued through many motions filed in this court. They argued for benefit comparable to the domestic claims, but this court and the Finance Committee and the debtor decided to deny any claimants filed by Korean claimant. As well as foreign claimants. That is what I like to raise through these motions. The motions are filed with this court, but all was failed. They are not successful. Modification of plan is simply executable if plan proponents agree. This mediation agreement is implicated with modification of plan, which is able, executable if plan proponents right now, even now, can agree, able to agree to modification of plan. It is not insurmountable obstacle to respect and enforce mediation agreement. The debtor Dow Corning Company argued that is Korean claimant frauded through the filing for verification or identification of product. It is actually part of the, partly true because we filed. Thank you for hearing my argument. The case is simply very important to Korean claimant. He is waiting for results positively. 3,600 Korean claimants. We appreciate the argument all of you have given and will consider the case carefully.